IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| LANDON TERRELL HARDIMAN, JR. ) | Case No. 07-00954-5-ATS |
| DAFFNEY MERRITT HARDIMAN, ) | |
| ) | |
| **Debtors** ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR RECONSIDERATION OF COURT'S ORDER OF AUGUST 15, 2007**

NOW COMES Coastal Federal Credit Union (herein "Coastal"), by and through its undersigned counsel, and hereby files this Memorandum of Law in support of its Motion For Reconsideration of this Court's Order of August 15, 2007 disapproving a Reaffirmation Agreement between the Debtors and Coastal Federal as follows:

**STATEMENT OF FACTS**

1.   On are about February 21, 2005, the Debtors purchased a 2005 Chevrolet Equinox, VIN #2CNDL13F056136198 (herein the "Vehicle") pursuant to the terms of an installment sales contract (herein collectively the "Contract") of even date. The Contract subsequently was assigned to Coastal Federal and Coastal Federal is currently the sole owner and holder of same.

2.   Pursuant to the terms of the Contract, Coastal Federal has a senior perfected first lien on the Vehicle that it duly and timely perfected.

3.   The Debtors commenced this case by a Chapter 7 petition filed on May 2, 2007.

4.  In connection with such petition, the Debtors filed a Statement of Intention reflecting that they intended to reaffirm the debt to Coastal Federal secured by the Vehicle.

5.  As of the petition date, the net balance due under the Contract was $20,409.40 and the account was next due for the May 23, 2007 payment of $479.69.

6.  On or about June 11, 2007, the undersigned counsel for Coastal Federal forwarded a proposed reaffirmation agreement to the Debtors' counsel, making no modifications to the parties' original agreement as set forth in the Contract.

7.  The Debtors subsequently completed and signed such Reaffirmation Agreement, and completed Part D thereof showing $3,925 in monthly income and $2,535 in currently monthly expenses, leaving $1,390 to make the required monthly payments on the debt to Coastal Federal.

8.  The Reaffirmation Agreement was then filed with this Court but the Debtors' attorney did not sign and file any affidavit on behalf of the Debtors stating that he found the Reaffirmation Agreement to be in the best interest of the Debtors. Accordingly, a hearing was scheduled for this Court to determine if the Reaffirmation Agreement was in the Debtors' best interest and therefore could be performed by the Debtors.

9.  On information and belief, the Debtors testified at the hearing that they were at that time current on their payments due under the Contract and should be able to continue to make such payments post-discharge, although it might be difficult some months. On information and belief, the Debtors also testified at the hearing that the Vehicle was worth substantially less than the balance owed under the Contract.

10. At the conclusion of the hearing, the Court found that the Reaffirmation Agreement imposed an undue hardship on the Debtors and was not in the Debtors' best interest. Accordingly, the Court entered an Order on August 15, 2007 disapproving the Reaffirmation Agreement but also holding that because the Reaffirmation Agreement was disapproved through no fault of the Debtors, Coastal Federal could not act pursuant to new §521(d) and/or §362(h) of the Bankruptcy Code to enforce the *ipso facto* clause contained in the Debtors' Contract, *i.e.*, declare a default and repossess the Vehicle solely due to the Debtors' bankruptcy filing.

11. Coastal Federal has filed a motion for reconsideration of such Order to the extent that it purports to impose a continuing federal bankruptcy law limitation on Coastal Federal's contractual and/or state law rights to act on its "*ipso facto* clause" in the Contract notwithstanding that it has no valid and enforceable reaffirmation agreement with the Debtors.

## QUESTION PRESENTED

Subsequent to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), are the provisions of new §521(d) of the Bankruptcy Code removing any federal bankruptcy law limitation on enforcement of "*ipso facto* clauses" available to a secured creditor whose reaffirmation agreement with the debtor is ultimately disapproved by the bankruptcy court?

## LEGAL ANALYSIS AND ARGUMENT

A. <u>BAPCPA Amendments To The Statutory Framework of §521</u>. Prior to the enactment of BAPCPA, binding precedent in the Fourth Circuit was that "a default-on-filing clause in an installment loan contract was unenforceable as a matter of law." *See In re Belanger*, 962 F.2d 345 (4th Cir. 1992) construing *Riggs Nat'l Bank v. Perry,* 729 F.2d 982 (4th Cir. 1984).

However, new §521(d) added to the Bankruptcy Code by BAPCPA, now substantially alters the statutory framework upon which *Belanger* relied in reaching such a conclusion, to-wit:

> 521(d)  If the debtor fails timely to take the action specified in subsection (a)(6) of this section, or in paragraphs (1) and (2) of section 362(h), with respect to property . . . as to which a creditor holds a security interest not otherwise voidable under section 522(f), 544, 545, 457, 548 or 549, nothing in this title shall prevent or limit the operation of a provision in the underlying lease or agreement that has the effect of placing the debtor in default under such lease or agreement by reason of the occurrence, pendency, or existence of a proceeding under this title or the insolvency of the debtor.  Nothing in this subsection shall be deemed to justify limiting such a provision in any other circumstance.

To connect the dots, "subsection (a)(6) of this section" states in pertinent part:

> (6) in a case under chapter 7 of this title in which the debtor is an individual, not retain possession of personal property as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property unless the debtor, not later than 45 days after the first meeting of creditors under section 341(a), either –
>
>> (A) enters into an agreement with the creditor pursuant to section 524(c) with respect to the claim secured by such property; or
>>
>> (B) redeem such property from the security interest pursuant to section 722.
>
> If the debtor fails to so act within the 45-day period referred to in paragraph (6), the stay under section 362(a) is terminated with respect to the personal property of the estate or of the debtor which is affected, such property shall no longer be property of the estate, and the creditor may take whatever action as to such property is permitted by applicable non-bankruptcy law . . .

and paragraphs (1) and (2) of section 362(h) state in pertinent part:

> (h)(1) In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, . . . and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)

4

(A)  to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, . . .

(B)  to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.

Thus, post-BAPCPA, Congress has now made clear that bankruptcy courts no longer have any authority to bar the secured creditors described in these new provisions from taking action to enforce any contractual and/or state law rights they might have to declare a "bankruptcy default" on an installment loan and repossess a debtor's collateral following bankruptcy notwithstanding that the debtor has at all times remained current on the payments due under such loan. Accordingly, the parties' agreement and applicable state law, not federal law, is now controlling with respect to determining the debtor's and creditor's respective rights regarding *ipso facto* clauses when the debtor fails to take the actions specified in the above-referenced provisions.

B.    Did The Debtor "Enter Into" A Reaffirmation Agreement With Coastal Federal Pursuant to §524(c)?    In the instant case, the Court has entirely side-stepped the provisions validating *ipso facto* clauses in new §521(d) and §362(h) by finding that the Debtors "entered into" a reaffirmation agreement with Coastal Federal pursuant to §524(c), notwithstanding that the Court subsequently refused to allow the Debtors to perform or be liable to Coastal Federal under such reaffirmation agreement. Coastal Federal submits that such an approach is a hyper-

technical reading of the relevant statutory provisions that cannot logically support the conclusion that, when all the dust has settled, a debtor can sign a reaffirmation agreement with a creditor, have that reaffirmation agreement declared entirely null, void and of no consequence/liability to the debtor by the bankruptcy court, and thereafter nonetheless be deemed to have "entered into" a reaffirmation agreement with that creditor pursuant to §524(c).  Not only is such a position irreconcilable with the plain language of revised §§521 and 524 and basic principals of contract law, but it also appears to eviscerate this Court's own acknowledgement that the various provisions added to §§521 and 362 by BAPCPA have now undisputedly eliminated the so-called "4th option" for Chapter 7 debtors.[1]

    1. <u>The Plain Language Of The Relevant Statutes</u>.  As with all questions of statutory interpretation and application, the analysis must begin with the plain language of the statute itself.  *See, e.g., Lamie v. U.S. Trustee*, 540 U.S. 526, 533, 124 S. Ct. 1023, 157 L.Ed.2d 1024 (2004) ("When the statute's language is plain, the court's sole function – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.")  Moreover, all statutes relating to the same subject-matter should be read, construed, and applied together, and harmonized wherever possible, so as to ascertain legislative intent and give effect to same.  *See In re Graupner*, 356 B.R. 907, 922-23 (M.D. Ga. 2006), *aff'd*  2007 U.S. Dist. LEXIS 46144 (M.D. Ga. June 26, 2007).  For purposes of the issue at bar, Coastal Federal asserts that the key statutory language, used in both §521(a)(6)(A) and §362(h)(1)(A), is not only the phrase "enter into an agreement" but also "pursuant to section 524(c)."

---

[1]  *See In re Donald*, 343 B.R. 524 (Bankr. E.D.N.C. 2006).

As noted by the Court in the *Donald* decision, BAPCPA made various substantive revisions to §524(c) dealing with the requirements for a valid reaffirmation agreement. While these revisions primarily deal with enhanced disclosures to the debtor, they also now require debtors to provide specific financial information concerning their ability to make the payments called for under any proposed reaffirmation agreement in order for the debtor's attorney and/or the bankruptcy court to determine whether reaffirming the debt in question does or does not impose an undue hardship on the debtor or the debtor's dependents. The debtor's attorney then has the option of whether or not to attach an affidavit stating that he or she has fully advised the debtor of the ramifications of reaffirming the debt in question and found that doing so does not in fact represent an undue hardship to the debtor. However, absent attorney representation in this reaffirmation process, §524(c)(6)(A) *requires* the bankruptcy court to review the proposed reaffirmation agreement and make the determination of whether or not it imposes an undue hardship on the debtor and therefore is or is not a valid and enforceable agreement between the parties going forward.

At the same time, new §521(a)(6)(A) now expressly requires a Chapter 7 debtor to either redeem his or her encumbered personal property or "enter into an agreement with the creditor pursuant to section 524(c) with respect to the claim secured by such property." As such, the plain language of §521(a)(6)(A) clearly encompasses *all* of §524(c), including subparagraph (6) requiring approval of the reaffirmation agreement by the bankruptcy court under the circumstances at bar, in order for the reaffirmation agreement to be a valid and enforceable agreement between the parties. Absent compliance with *all* of §524(c), including obtaining bankruptcy court approval of the reaffirmation agreement under the specified circumstances, a

debtor obviously cannot be said to have "entered into an agreement with the creditor *pursuant to section 524(c)*" (emphasis added) and therefore must either redeem or release the property in question in accordance with the applicable provisions of new §521(a)(2)(A) and §362(h) discussed above.

    2.    <u>Applicable Principals of Basic Contract Law</u>.  The conclusion that the Debtors have not "entered into" a reaffirmation agreement with Coastal Federal, pursuant to §524(c) or otherwise, is clear from a review of the basic principals of applicable contract law. The North Carolina courts have long held that an essential element of a valid contract is mutuality of obligations between the parties. *See, e.g., McNair v. Goodwin*, 136 S.E.2d 218 (N.C. 1964); *see also, Kirby v. Stokes County Bd. Of Educ.*, 55 S.E.2d 322 (N.C. 1949) ("[m]utuality of promises" means that promises to be enforceable, must each impose a legal liability upon the promisor and each promise then becomes a consideration for the other.") and *Croom v. Goldsboro Lumber Co.*, 108 S.E. 735 (N.C. 1921) ("One of the essential elements of every contract is mutuality . . . ").  In the instant case, the Debtors and Coastal Federal signed a reaffirmation agreement, the validity and enforceability of which was entirely contingent on this Court's approval of same pursuant to the terms of §524c)(6).  Following the hearing relative to same, the Court ruled that the proposed agreement between Coastal Federal and the Debtors was not in the Debtors' best interests and therefore it would not in fact allow the Debtors to undertake and perform the promises to Coastal Federal called for thereunder. Therefore, the Debtors cannot be said to have substantively "entered into" any agreement with Coastal Federal since at no time were there any enforceable obligations on the part of the Debtors to Coastal Federal as contemplated therein. Without bankruptcy court approval, the

reaffirmation agreement signed by the Debtors and Coastal Federal was at best a conditional agreement subject to an express condition precedent imposed by §524(c)(6), a condition which indisputably was not met and which therefore wholly prevented the parties' conditional agreement from ever "coming to life." To so strictly or literally interpret the phrase "enter into an agreement" so surely contrary to the approach to statutory construction described in *Lamie*.

    3. <u>Congress' Intent In Enacting The New Provisions Relevant To Reaffirmation Agreements</u>. The conclusion that debtors must now *actually* reaffirm their debts in order to retain personal property encumbered by installment debts, not just *attempt* to reaffirm such debts is further supported by what can be gleaned of Congress' intent in enacting the various new provisions regarding reaffirmation agreements as a whole. While the legislative history to BAPCPA is admittedly sparse, the House Report states in its introductory comments that the protections for secured creditors are generally provided in the bill's termination of the automatic stay regarding personal property if the debtor does not "timely *reaffirm* the underlying obligation or redeem the property." (emphasis added) Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 257, H.R. Rep. No. 109-31, Pt. 1, 109th Cong., 1st Sess. (2005). Significantly, these comments don't say "sign a reaffirmation agreement," or "attempt to reaffirm" or "enter into a proposed reaffirmation agreement." They clearly state that the debtor has to "reaffirm" the debt in question in order to avoid stay relief for the creditor, which would then leave such creditor with whatever contractual and/or state law rights it may (or may not) have to declare a default under its contract and/or repossess its collateral due to the lack of an enforceable reaffirmation agreement with the debtor. In this case, there is no question that the Debtors' have not "reaffirmed" the debt owed to Coastal Federal, a conclusion that no

amount of parsing of the language of §521(d) and/or §365(h)(6)(A) can escape. Accordingly, this case falls squarely within the parameters of the new statutory scheme enacted by Congress relative to reaffirmation agreements, including validation of *ipso facto* clauses under circumstances such as these, under any of the applicable analyses.[2] As such, Coastal Federal respectfully submits that it is the Court's role to now carry out what Congress has legislatively mandated.

    C. <u>Just "Ride Through" By Another Means</u>? Coastal Federal finds the Court's ruling in this case regarding its *ipso facto* clause particularly puzzlingly inasmuch as this Court has itself admitted that it is convinced that termination of the "ride through" option is exactly what Congress ultimately sought to accomplish by the changes wrought to §362(h), §521(a)(6) and §521(d), collectively, via BAPCPA. *See In re Donald,* 343 B.R. at 524. To now hold that, bottom line, the Debtors *can* in fact "ride through" this case with respect to the debt owed to Coastal Federal therefore appears to be both an elevation of form over substance and wholly inconsistent with the Court's ruling on the non-viability of the "4th option" post-BAPCPA.

    Moreover, if there is such an easy way to avoid Congress' intentions in this regard, virtually all Chapter 7 debtors in any of the former "4th option" jurisdictions can now "game the system" relative to reaffirmation agreements. In order to once again enjoy easy access to "retain and pay" on secured debts, all a Chapter 7 debtor would have to do is sign any reaffirmation agreement proposed by his or her creditors, express doubts/concerns about whether he or she will in fact be able to live up to the terms of same, and thereby likely create enough doubt in the mind

---

[2]  *But cf. In re Husain*, 2007 WL 709302 (Bankr. E.D. Va. March 5, 2007); *In re Blakeley*, 2007 WL 674712 (Bankr. D. Utah Jan. 17, 2007).

of his or her attorney to ensure that no attorney affidavit is filed with the reaffirmation agreement(s). A hearing would then have to be set by the bankruptcy court to review the reaffirmation agreement, at which time the debtor could then express those same doubts/concerns about future performance and/or make note to the bankruptcy court that the collateral pledged for the debt(s) being reaffirmed was likely worth less than the amount still owed for same (as is very often the case). The bankruptcy court would then almost certainly disapprove the reaffirmation agreement in question, and without the protections for the secured creditor provided in new §521(d) and §362(h), the parties would remain in exactly the same position as existed in all "4th option" jurisdictions pre-BAPCPA. Allowing such a ripe climate for potential abuse by Chapter 7 debtors is clearly is at odds with the bankruptcy court's acknowledged role as defender and protector of the integrity of the overall bankruptcy scheme.

Finally, Coastal Federal asserts that the whole premise of bankruptcy is stood squarely on its head when the bankruptcy court disapproves a reaffirmation agreement but then intentionally allows a clever debtor, who it has determined cannot feasibly afford an encumbered (or over-encumbered) asset, to keep same and continue to struggle along post-discharge to pay for such asset. Such a situation obviously erodes the debtor's "fresh start" to a substantial degree and therefore cannot itself logically be in the debtor's best interest either. Allowing debtors to stay in the same financially-draining loan arrangements, even without any continuing personal liability for same, also appears to be an abdication by the bankruptcy court of its designated role in §524(c) and (d) to ensure that Chapter 7 debtors in fact take the steps necessary to emerge from bankruptcy with their financial affairs in order, whether voluntarily or with the Court's help. However, while possibly painful in the short run, forcing Chapter 7 debtors in these situations to

simply go ahead and "bite the bullet" for the long term economic benefit could ultimately turn out to be the single best outcome for their long- term post-bankruptcy financial health, and is therefore a decision that the bankruptcy courts should not shy away from making for those debtors who either can't, or won't, make such a decision for themselves.

## CONCLUSION

Accordingly, for the foregoing reasons, Coastal Federal requests the Court to find that under the circumstances of this case, the BAPCPA revisions to §§521 and 362 do in fact require the Debtors to either *effectively* reaffirm the debt secured by the Vehicle, or redeem the Vehicle, in order to retain possession of same, irrespective of whether they are current on the agreed-upon installment payments due under the Contract, and that absent *actual* reaffirmation or redemption, Coastal Federal is left to whatever contractual and/or state law rights and remedies it may have with respect to the enforcement, and enforceability, of the *ipso facto* clause contained in the Debtors' Contract.

Respectfully submitted this the 26th day of September, 2007.

**KIRSCHBAUM, NANNEY, KEENAN & GRIFFIN, P.A.**


By: s/ Pamela P. Keenan
    Pamela P. Keenan
    State Bar No. 20328
    Attorneys For Coastal Federal Credit Union
    P.O. Box 19766
    Raleigh, NC  27619
    Telephone (919) 848-0420
    Facsimile  (919) 848-4216

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this day, she served a copy of the foregoing on the parties in interest either electronically or by depositing copies of same in a depository under the exclusive care and custody of the United States Postal Service, in a postage-paid envelope, addressed as follows:

Landon and Daffney Hardiman
100 Cedar St.
Butner, NC  27509

John T. Orcutt
Attorney for Debtors
6616 203 Six Forks Rd.
Raleigh, NC  27615

Joseph N. Callaway
Chapter 7 Trustee
P.O. Box 7100
Rocky Mount, NC  27804

This the 26th day of September, 2007.

s/          *Gwen Best*
Gwen Best
Paralegal