

**SO ORDERED.**

**SIGNED this 20 day of November, 2007.**

_____
A. Thomas Small
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| LANDON TERRELL HARDIMAN, JR. | 07-00954-5-ATS |
| DAFFNEY MERRITT HARDIMAN | |
| DEBTORS | |

**ORDER DENYING MOTION FOR RECONSIDERATION**

The matter before the court is the motion for reconsideration filed by Coastal Federal Credit Union ("Coastal"). Coastal seeks reconsideration of the "Order Regarding Reaffirmation Agreement" entered by this court on August, 15, 2007. A hearing took place in Raleigh, North Carolina on October 31, 2007.

Landon Terrell Hardiman, Jr. and Daffney Merritt Hardiman filed a petition for relief under chapter 7 of the Bankruptcy Code on May 2, 2007. At the same time, the debtors filed their Schedules I, J, and D. The debtors' Schedule I indicated a combined average monthly income of $4,454.93 and their Schedule J showed average monthly expenses of $5,689, resulting in a negative figure for net monthly income (-$1,234.07). Among their assets, the debtors listed a 2005 Chevrolet Equinox, which they valued at $9,000. Coastal holds a lien on the vehicle pursuant to an installment

sales contract. In their Schedule D, the debtors list the amount of Coastal's claim at $21,145.00. Coastal did not file a proof of claim in this case. The debtors also filed a statement of intention in which they indicated that the debt to Coastal would be reaffirmed.

On June 25, 2007, the debtors signed a reaffirmation agreement (the "Agreement") prepared by Coastal, reaffirming their debt in the amount of $20,048.69. Under the Agreement, the simple interest rate is 5.5%, and the monthly payments are $479.69 per month, plus all accrued unpaid interest, late charges, etc. called for under the sales contract. In Part D of the Agreement (the "Debtor's Statement in Support of Reaffirmation"), the debtors state that their monthly income is $3,925 and their monthly expenses total $2,535, leaving $1,390 to make the required monthly payments. In Part E (the "Motion for Court Approval"), the debtors state that they are able to make the payments because of the discharge of personal debt resulting from their bankruptcy filing. The debtors also note that they have three children and that the vehicle is their only reliable means of transportation. Though the debtors are represented by counsel in their bankruptcy case, their attorney did not sign the Agreement and the debtors indicated in Part E that they were not represented during the course of negotiation of the Agreement.

A hearing took place on August 15, 2007, to consider whether to approve the reaffirmation agreement, as required by 11 U.S.C. § 524(d) when a debtor has not been represented by an attorney during the course of negotiating the agreement. At the hearing, the debtors' counsel stated that the debtors were concerned about showing sufficient income in order to keep the vehicle, and although Part D of the Agreement showed positive monthly net income, the petition indicated a monthly deficit in excess of $1,200. The debtors' counsel also represented to the court that the value of the vehicle is approximately $9,000, the amount owed is over $20,000, and the sales contract contains

a "bankruptcy default clause" (or "ipso facto clause"), which allows Coastal to declare a default based solely on the fact that the debtors filed for bankruptcy protection.  When asked if they could continue to make the payments on the vehicle, the debtors stated that it would be difficult some months, but that they thought they could pay on time.  The court noted the substantial difference in the value of the vehicle and the amount of the outstanding balance owed, as well as the corresponding potential for a large deficiency if the debtors were unable to make the payments. Because of the uncertainty of the debtors' ability to pay and the size of the potential deficiency, the court disapproved the Agreement, finding that it would impose an undue hardship on the debtors and that it was not in their best interest.  However, the court held that because the Agreement was disapproved through no fault of the debtors, Coastal would not have the benefits of 11 U.S.C. §§ 521(d) and 362(h), and that Coastal could not repossess the vehicle or declare default based on the debtors' bankruptcy filing as long as the debtors remain current in their payments.  Because notice of the hearing may not have alerted Coastal to the possibility that the court would disapprove the Agreement and limit Coastal's actions under the sales contract, the court authorized a request for reconsideration if filed within 10 days.  The court's order regarding the Agreement was entered on August 15, 2007.

On August 24, 2007, Coastal filed a motion for reconsideration of the court's order, later followed by a memorandum of law supporting the motion.  Coastal objects to the part of the court's decision that prohibits Coastal from exercising its rights under the ipso facto clause in the sales contract.  Coastal contends that the debtors are essentially receiving the benefits of the "retain and pay" or "ride-through" option, which Coastal claims has been eliminated with respect to personal property that serves as collateral for a secured debt.  Coastal further argues that § 521(d) allows it

to exercise its rights under the ipso facto clause because the debtors failed to "reaffirm" the debt, in that the court's disapproval rendered the Agreement unenforceable. The debtors contend that § 521(d) has not been triggered because the debtors "entered into" an agreement as contemplated by §§ 521(a)(2) and 362(h). The debtors maintain that they have done everything within their control to perform their intent to reaffirm the debt and that the court's approval or disapproval of an agreement under § 524(c)(6)(A) is separate and distinct from the debtors' performance. The court agrees with the debtors.

The court's analysis begins with an inquiry into whether the debtors fulfilled their initial duties in connection with the debt to Coastal. Section 521 of the Bankruptcy Code imposes duties on chapter 7 debtors when the debtor has debts secured by property of the estate. Section 521(a)(2) provides, in pertinent part:

> if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate–
> (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier . . . the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;
> (B) within 30 days after the first date set for the meeting of creditors under section 341(a) . . . the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and
> (C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or trustee's rights with regard to such property under this title, except as provided in section 362(h)[.]

11 U.S.C. § 521(a)(2). Section 362(h)(1) provides, in relevant part:

> In a case in which the debtor is an individual, the stay . . . is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, . . . and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2) –

4

> (A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property . . . and
> (B) to take timely the action specified in such statement . . . .

11 U.S.C. § 362(h)(1).[1] It is undisputed that the debtors filed their statement of intention, indicating their intent to reaffirm the debt to Coastal, in a timely manner in satisfaction of §§ 521(a)(2)(A) and 362(h)(1)(A). The heart of the dispute, however, is whether the debtors performed their intention with respect to the debt – whether their actions, notwithstanding the court's disapproval of the Agreement, satisfied the requirements of §§ 521(a)(2)(B) and 362(h)(1)(B).

The question of whether the debtors fulfilled their duties with respect to the debt also arises under § 521(a)(6), which provides, in relevant part:

> [The debtor shall] in a case under chapter 7 of this title in which the debtor is an individual, not retain possession of personal property as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property unless the debtor, not later than 45 days after the first meeting of creditors under section 341(a), either –
>     (A) enters into an agreement with the creditor pursuant to section 524(c) with respect to the claim secured by such property; or
>     (B) redeems such property from the security interest pursuant to section 722.
> If the debtor fails to so act within the 45-day period referred to in paragraph (6), the stay under section 362(a) is terminated with respect to the personal property of the estate or of the debtor which is affected, such property shall no longer be property

---

[1] The "agreement of the kind specified in section 524(c)" referred to in subparagraph (A) is described by § 524(c) as follows: "[a]n agreement between the holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title . . . " 11 U.S.C. § 524(c). Section 524(c) goes on to provide that such an agreement is enforceable under nonbankruptcy law, but only if certain requirements are met. Most relevant to this matter is the requirement that, "in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as– (i) not imposing an undue hardship on the debtor or a dependent of the debtor; and (ii) in the best interest of the debtor." 11 U.S.C. § 524(c)(6)(A).

>of the estate, and the creditor may take whatever action as to such property as is permitted by applicable nonbankruptcy law . . . .

11 U.S.C. § 521(a)(6). However, as this court previously noted in In re Donald, this provision will rarely be applicable in chapter 7 cases, because "[c]reditors will rarely have an allowed claim for the full purchase price of personal property, either because consumer purchases typically involve a down payment or because where the full purchase price was financed, installment payments will have been made prior to bankruptcy." In re Donald, 343 B.R. 524, 537 (Bankr. E.D.N.C. 2006). In the present case, it appears from the sales contract that the debtors made a down payment, and the debtors have paid down their original debt, so Coastal does not hold a claim for the "purchase price." Further, no proof of claim was filed and Coastal does not have an "allowed claim" in any amount. Consequently, § 521(a)(6) is not applicable in this case.

The consequences of a debtor's failure to surrender, redeem or reaffirm a debt can be severe. Under § 362(h)(1), a debtor's failure to act results in loss of the protection of the automatic stay. 11 U.S.C. § 362(h)(1). In addition, § 521(d), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23, § 305 (April 20, 2005), eliminates the Code's restrictions on ipso facto clauses.[2] 11 U.S.C. § 521(d). Section 521(d) now provides:

>If the debtor fails timely to take the action specified in subsection (a)(6) of this section, or in paragraphs (1) and (2) of section 362(h), with respect to property . . . as to which a creditor holds a security interest . . . nothing in this title shall prevent or limit the operation of a provision in the underlying lease or agreement that has the effect of placing the debtor in default under such lease or agreement by reason of the

---

[2]Prior to the enactment of BAPCPA, the Fourth Circuit, relying on precedent established in Riggs Nat'l Bank v. Perry, held that a "default-on-filing clause in an installment loan contract was unenforceable as a matter of law." In re Belanger, 962 F.2d 345, 348 (4th Cir. 1992) (construing Riggs Nat'l Bank v. Perry, 729 F.2d 982, 984-85 (4th Cir. 1984)).

6

>     occurrence, pendency, or existence of a proceeding under this title or the insolvency
>     of the debtor.

11 U.S.C. § 521(d). Thus, where a security agreement contains an ipso facto clause, a debtor's failure to comply with § 362(h) allows the creditor to take action under the default clause.

Coastal maintains that the debtors have not met the Code's reaffirmation requirements, thereby triggering § 521(d) and allowing Coastal to enforce its rights under the ipso facto clause in the sales contract. Coastal argues that although the debtors intended to reaffirm the debt, signed the Agreement, and sought the court's approval, they have not "entered into" a reaffirmation agreement because the court's disapproval rendered the Agreement unenforceable. With no enforceable reaffirmation agreement, Coastal's view is that the debtors are now subject to the consequences of losing the benefits of the automatic stay and potentially being in default under the sales contract because they filed for bankruptcy protection. But the court disagrees. The Code does not require the debtors to enter into a reaffirmation agreement *and* obtain court approval in order to comply with §§ 521(a) and 362(h). The debtors have done everything within their control to reaffirm the debt: they filed a statement of intention indicating their intent to reaffirm, signed the Agreement, and appeared in court in support of their motion for approval of the Agreement. By signing the Agreement, the debtors "entered into" an agreement to reaffirm the debt to Coastal. This constitutes "performing their intention" to reaffirm, as required by § 521(a)(2)(B), as well as "entering into an agreement of the kind specified in §524(c)," as required by § 362(h)(1).[3] Section 521(a)(2)(B) does not mandate that debtors entirely consummate their stated intention within 30 days; rather a debtor must "take steps to act on an intention to either retain or surrender." In re Hinson, 352 B.R. 48, 50 (Bankr.

---

[3] It is undisputed that the debtors signed the Agreement within the time periods specified by §§ 521 and 362.

E.D.N.C. 2006), quoting In re Price, 370 F.3d 362, 372 (3d Cir. 2004).[4] See also In re Husain, 364 B.R. 211 (Bankr. E.D. Va. 2007) (holding that the debtors' timely act of entering into mutually satisfactory reaffirmation agreements with their creditors "must be viewed as sufficient to satisfy the performance standards of § 521(a)."). The same logic applies to the requirements of § 362(h)(1) (that a debtor timely file a statement of intention and perform the stated intention.) Where, as here, a debtor fully complies with the requirements §§ 521(a) and 362(h), the remedies contained in §§ 362(h)(1) and 521(d) are not triggered – the automatic stay remains in place and the creditor may not act under its ipso facto clause.

The crux of the creditor's remaining argument is consistent with an argument raised in In re Donald: that the "ride-through" option was eliminated by BAPCPA revisions to the Bankruptcy Code. 343 B.R. 524. Coastal argues that allowing the debtors in the present case to "ride-through" is inconsistent with the court's ruling in Donald. The debtors in Donald initially sought to retain their vehicle and continue making payments on the debt without reaffirming the debt, a permissible practice under In re Belanger, a pre-BAPCPA case. See In re Belanger, 962 F.2d 345 (4th Cir. 1992) (holding that the debtor had alternatives under 11 U.S.C. § 521 to reaffirming, redeeming, or surrendering collateral, such as retaining the collateral and remaining current in payments – often referred to as "retain and pay," the "fourth option," and "ride through"). In Donald, this court examined the debtors' options at length and concluded that the BAPCPA revisions had changed the

---

[4] In re Hinson involved different facts in that the creditor refused to sign the reaffirmation agreement. However, the matter involved the issue at hand: whether a debtor has fulfilled the requirements of § 521(a)(2) when the reaffirmation agreement is ultimately unenforceable but the debtor has taken all necessary steps to reaffirm the debt.

law regarding the "ride-through" option formerly upheld in Belanger.[5]  Specifically, the court found that the "ride-through" option was eliminated through changes to what is now § 521(a)(2)(C) as well as the addition of §§ 362(h), 521(a)(6), and 521(d). Donald, 343 B.R. at 539-40.  As an alternative course of action, the debtors in Donald filed a reaffirmation agreement, in the event that the "ride-through" election failed.  The debtors argued that by executing a reaffirmation agreement, they could avoid the consequences arising from §§ 362(h), 521(a)(6), and 521(d), even where the reaffirmation agreement is, or will become, unenforceable.  343 B.R. at 540.  Essentially, the debtors argued that the act of entering the agreement is separate and distinct from the court's approval or disapproval and that the debtors should not suffer the consequences of not reaffirming the debt when they did all that was required of them under the Code.

This argument failed in Donald because the court ultimately found that entering into the reaffirmation agreement was in the debtors' best interest and would not cause them any undue hardship.  However, the court clearly stated that such an argument "may prevail in some circumstances."  Id.  The court stated:

> In some circumstances a reaffirmation agreement entered into by the debtor in good faith may satisfy the requirements of § 362(h), § 521(a)(6) and § 521(d) where the court disapproves the reaffirmation agreement under § 524(c)(6), especially where the debtor intends to perform under the reaffirmation agreement and where disapproval by the court is beyond the debtor's control.

Id. at 541.  Based on the facts discussed above, this is such a case.  Other courts have reached the same conclusion regarding debtors who, through no fault of their own, face losing personal property

---

[5]The "ride-through" option continues with respect to debts secured by *real* property.  See In re Wilson, 372 B.R. 816 (Bankr. D. S.C. 2007) (debtor with real property encumbered by mortgage liens could properly elect to retain possession of the property and continue making payments on her mortgage debts, under Belanger).

because their reaffirmation agreement was not approved. As the court held in In re Moustafi, a case with similar facts:

> BAPCPA's amendments did not eliminate ride-through in every instance; the amendments only eliminated ride-through for debtors who do not comply with §§ 521(a)(2) or (a)(6). If Congress had intended to completely eliminate ride-through, it could have done so by making §§ 362(h)(1) and 521(a)(6) apply if a reaffirmation agreement is disapproved by the court.

In re Moustafi, 371 B.R. 434, 439 (Bankr. D. Ariz. 2007). Similarly, the court in In re Blakeley held:

> While BAPCPA has done away with simple "ride through" in bankruptcy, it has not entirely eliminated the possibility that a debtor can "ride through" a bankruptcy and retain possession of secured personal property. Under the limited circumstances [of this matter], where a debtor timely complies with all requirements under §§ 521 and 362(h), the debtor can "ride through" the bankruptcy notwithstanding a bankruptcy court's refusal to approve the reaffirmation agreement.

In re Blakeley, 363 B.R. 225, 232 (Bankr. D. Utah 2007).

Accordingly, the court's prior disapproval of the reaffirmation agreement stands. Because court approval of a reaffirmation agreement is not an element of §§ 521(a)(2) and 362(h)(1), the debtors complied with the requirements of the Code by doing everything within their control to reaffirm the debt to Coastal. While "ride-through" is not a stand-alone option in addition to surrender, redemption, or reaffirmation of a debt secured by personal property, it may, in limited circumstances, occur as a result of a debtor's attempt to reaffirm. Coastal's motion for reconsideration is **DENIED**. The automatic stay remains in place with respect to Coastal, and as long as the debtors remain current in their payments, Coastal may not repossess the vehicle or declare default based on the debtors' bankruptcy filing.

**SO ORDERED**.

**END OF DOCUMENT**